NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| COUNTY CONCRETE CORP. *et al.*, : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> TOWNSHIP OF ROXBURY *et al.*, : <br> : <br> Defendants. : <br> : | **Hon. Dennis M. Cavanaugh** <br><br> **OPINION** <br><br> Civil Action No. 03-CV-1445 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon separate motions by Defendant Thomas J. Bodolsky ("Bodolsky") and Defendants Township of Roxbury ("Roxbury," or the "Township"), Mayor and Council of the Township of Roxbury, Sandy Urgo, Jim Rilee, Marshall Gates, Carol Scheneck, Richard Herzog, Fred Hall, Planning Board of the Township of Roxbury ("Planning Board"), Richard Zoschak, John Ciaramella, Barbara Dawson, Robert Badini, Lawrence Sweeney, Lisa Voyce, Ray Scanlon, Patricia Davenport, P. Scott Meyer, and Russell Stern (collectively, the "Roxbury Township Defendants") for summary judgment pursuant to Fed. R. Civ. P. 56. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of the parties, and based upon the following, it is the finding of this Court that Bodolsky's motion for summary judgment is **granted**, and that the Roxbury Township Defendants' motion for summary judgment is **granted in part**, **denied in part**.

I. **BACKGROUND**

A. Factual Background

Plaintiffs County Concrete Corp., J.C. Soil & Gravel, LLC, and John C. Crimi ("Plaintiffs") own four tracts of land in Roxbury Township, New Jersey. The tracts are commonly referred to as the Gallo, Kowaski, Dell Avenue Miscellaneous and Dell Avenue Industrial tracts. In June 1981, the Township Planning Board passed a resolution (the "1981 Resolution") allowing Plaintiffs to conduct sand and gravel mining operations on their properties for twelve years, with notice that the property might later be put to productive use. Plaintiffs and the Township then entered into a Development Agreement pursuant to the 1981 Resolution requiring Plaintiffs to restore the property as a long-term water and recreational resource upon completing the sand and gravel removal operation.

In 1996, the Township revised its existing Land Development Ordinance to prohibit quarrying and mining operations in all zoning districts. In August 1999, Roxbury sent Defendant Bodolsky to investigate Plaintiffs' mining operations. Bodolsky issued a letter to Plaintiffs in October 1999 ("the Bodolsky letter") alleging that Plaintiffs were not conducting their operations in compliance with the applicable agreements and seeking to declare Plaintiffs in default of the agreements. The Bodolsky letter charged that Plaintiffs had performed excavation beyond permitted limits, creating unstable and dangerous slopes.

Prior to April 2001, the Township's Land Development Ordinance categorized the area containing Plaintiffs' property as industrial. Plaintiffs' property abuts the Borough of Wharton and the Township of Mine Hill, and the sand and gravel operation conducted by Plaintiffs on the

Gallo tract is partially on an inter-municipal operation, as it straddles the borders of Roxbury and Mine Hill. In April 2001, however, a chapter of the Land Development Ordinance was repealed and replaced with a new Chapter XIII, Ordinance 3-01 (the "2001 Ordinance"). The 2001 Ordinance incorporated revised zoning regulations and zoning maps and implemented the recommendations of the Planning Board's esisting master land use plan element. As a result, the zoning of the Gallo, Kowaski, and Dell Avenue Miscellaneous tracts were changed to RR Rural Residential, and the Dell Avenue Industrial tract was changed to OS Open Space.

    B.    <u>Procedural Background</u>

Plaintiffs filed a seven count Complaint in April 2003 alleging a regulatory taking / inverse condemnation, violations of Substantive Due Process ("SDP") and Equal Protection ("EPC"), and alleging that the re-zoning of their property by the 2001 Ordinance denied them a practical and feasible use of their property. Plaintiffs also filed a complaint in New Jersey Superior Court, <u>County Concrete Corp., et al. v. Township of Roxbury, et al.</u>, Dkt. No. MRS-L-1519-01, challenging the 2001 Ordinance. In October 2003, the state court dismissed with prejudice Plaintiffs' challenge to the 2001 Ordinance.

On September 24, 2003, all Defendants but Bodolsky filed a motion to dismiss all counts and for summary judgment on Counts Four, Five, and Seven. The Court granted the motion on May 28, 2004. Bodolsky then filed a motion to dismiss and for summary judgment, which the Court also granted on January 25, 2005. On April 24, 2006, however, the Third Circuit reversed those decisions in part, and remanded claims for SDP, EPC, Fifth Amendment Takings, breach of the implied covenant of good faith and fair dealing, and tortious interference and civil

conspiracy (as against Defendant Stern only).

Plaintiffs then filed an Amended Complaint on February 16, 2007, alleging claims for SDP, EPC, Fifth Amendment Takings, and breach of the covenant of good faith and fair dealing. Defendant Bodolsky filed a motion for summary judgment on July 21, 2008, and the Roxbury Township Defendants similarly filed on September 26. Currently before the Court are Defendants' motions for summary judgment on all claims.

## II. STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. See id. "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable

inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. App'x 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

### III. DISCUSSION

Currently before the Court are Defendants' motions for summary judgment seeking dismissal of all claims. For the reasons stated, the Court finds that: the SDP challenge to the face of the 2001 Ordinance is dismissed as to all Defendants; the SDP claim as to Defendants' conduct is dismissed as to all Defendants; the EPC challenge to the face of the 2001 Ordinance is dismissed as to all Defendants; the Fifth Amendment Takings claim is dismissed as to Bodolsky only; and the claim for breach of the covenant of good faith and fair dealing is dismissed as to Bodolsky only.

A. Substantive Due Process as to the Ordinance

Plaintiffs argue that the 2001 Ordinance violates SDP on its face because it was passed with improper motives and because it is not rationally related to any legitimate government interest. Municipal zoning ordinances typically withstand SDP challenges provided that the government can identify a "legitimate state interest that the legislature could rationally conclude was served by the statute." See County Concrete Corp. v. Twp. of Roxbury, 442 F.3d 159, 169 (3d Cir. 2006). This "highly deferential, objective" standard is applied in "recognition that the process of democratic political decisionmaking often entails the accommodation of competing interests, and thus necessarily produces laws that burden some groups and not others." See Pace Res., Inc. v. Shrewsbury Twp., 808 F.2d 1023, 1035 (3d Cir. 1987); Phillips v. Borough of

5

Keyport, 107 F.3d 164, 186 (3d Cir. 1997) (Alito, J., concurring and dissenting). Accordingly, courts should refrain from interfering with the legislative acts of a zoning board unless "the governmental body could have had no legitimate reason for its decision." See County Concrete, 442 F.3d at 169 (citing Phillips, 107 F.3d at 186). This is true even if the zoning ordinance is alleged to have been passed with an improper motive. See id. at 169–70 (distinguishing between the standards of review for SDP challenges to legislative and non-legislative acts; noting that legislative acts will be upheld if rationally related to a legitimate interest, while non-legislative state acts are invalid if "tainted by improper motive").

    Here, Defendants assert a series of "legitimate state interests" that they argue are rationally served by the 2001 Ordinance, including, *inter alia*: (1) preserving and protecting environmental resources, particularly water resources; (2) protecting nearby residential areas and making the properties more consistent with their surrounding areas; and (3) classifying the properties in a manner more suitable to the particular characteristics of the properties. As an initial matter, there can be little doubt that each of these are "legitimate state interests." See, e.g., Wawa, Inc. v. New Castle County, 391 F. Supp. 2d 291, 296 (D. Del. 2005) (county had legitimate purpose in "protecting [its] water resources and ensuring a safe supply of public water for the health and safety of the community"); Acierno v. New Castle County, 2000 WL 718346, *4 (D. Del. May 23, 2000) ("conform[ing] the zoning of [a] property to that of the surrounding properties" is a legitimate state interest); Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 134 (3d Cir. 2002) (creating residential-only districts is legitimate state interest because such re-zoning "increase[s] the safety and security of home life," "reduc[es] the traffic and

resulting confusion," and "preserv[es] a more favorable environment in which to raise children").

Thus, the Court is left to determine whether the 2001 Ordinance was "rationally related" to serving those interests. Defendants have produced significant evidence showing that the land tracts are located in environmentally sensitive areas, that the nature of the area has changed from industrial to residential, and that the tracts are more suitable to residential and open space uses. Plaintiffs counter each of these assertions by arguing that the 2001 Ordinance was passed arbitrarily and with "improper motives," and that, in any event, the conflicting facts with respect to whether the Ordinance was rationally related to a legitimate state interest present a jury question. Despite the factual disputes, however, the Court finds as a matter of law that, at the very least, the Township "could" have rationally found that these legitimate state interests were served by the Ordinance. See Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 683 (3d Cir. 1991) (noting that "the rational relationship test is a legal standard to be applied by the court"), overruled on other grounds, United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa., 316 F.3d 392, 400 (3d Cir. 2003). Furthermore, because the Court finds that the Township had a legitimate interest in passing the Ordinance, it is irrelevant whether or not it was also passed with improper motives. See County Concrete, 442 F.3d at 169 (noting that courts should invalidate legislation "only if the governmental body could have had no legitimate reason for its decision"); Acierno, 2000 WL 718346, at *4 (noting that, under rational basis review, "[t]he actual motivations of the [governmental body] are entirely irrelevant"). Accordingly, because the Township has identified a legitimate state interest that was rationally served by the 2001 Ordinance, the Court will grant summary judgment on the SDP facial challenge.

B.     Substantive Due Process Claim as to Defendants' Conduct[1]

Summary judgment is also appropriate on Plaintiffs' SDP claim based on Defendants' obstructive conduct because Plaintiffs failed to file suit within the applicable statutory period. Claims under Section 1983 are subject to the state's statute of limitations for personal injury claims. See Wilson v. Garcia, 471 U.S. 261, 276–78 (1985). Thus, because New Jersey's statute of limitations for personal injury is two years, see N.J.S.A. 2A:14-2, Plaintiffs' due process claims are subject to a two-year statute of limitations. See Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1990).

Here, Plaintiffs filed their Complaint on April 2, 2003, alleging SDP violations due to Defendants' alleged campaign of obstruction designed to deprive Plaintiffs of the right to be free from harassment in their land development efforts. This alleged campaign is based on a series of actions taken by Defendants between the years 1994 and 2000. Indeed, Plaintiffs make clear that their SDP claim is based only on "events preceding the ordinance," and does not include the actual passing of the Ordinance in 2001. (Pls.' Mem. Opp'n Summ. J. 22). Nonetheless, Plaintiffs argue that their filing in 2003 was timely because the two-year limitations period did not begin to run until the passing of the 2001 Ordinance, which is when Plaintiffs argue that they sustained their injuries. Plaintiffs are incorrect. The proper focus in a statute of limitations

---

[1] This Court previously dismissed Plaintiffs' SDP, EPC and Takings claims against all individual Defendants on the ground of absolute legislative immunity. On appeal, the Third Circuit vacated that decision and remanded for determination of which of the many individual defendants, if any, are entitled to legislative immunity, and whether the immunity applies in their individual or official capacities. Because none of the parties have raised the issue of legislative immunity in their briefs, however, the Court will not address the matter here.

8

inquiry "is on the time of the [alleged] acts, not upon the time at which the consequences of the acts became most painful." See Del. State College v. Ricks, 449 U.S. 250, 258 (1980). Furthermore, to the extent that Plaintiffs' due process claim is based on a violation of their "right to be free from harassment in [their] land development," see County Concrete, 442 F.3d at 170, the Court finds that Plaintiffs would have sustained injuries with each harassing act. See Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998) (the limitations period "accrues when the plaintiff knew or should have known of the injury upon which its action is based"). Accordingly, because the final act underlying this claim occurred more than two years prior to the Plaintiffs' filing of their Complaint, the Court finds that Plaintiffs' SDP claim based on alleged obstructive conduct is barred by the statute of limitations.

    C.    Equal Protection Claim

Summary judgment is appropriate on the EPC facial challenge to the 2001 Ordinance because the Ordinance was rationally related to a legitimate government interest. Courts faced with an EPC challenge to a zoning ordinance must determine "whether '[the [governmental body] has irrationally distinguished between similarly situated classes.'" See County Concrete, 442 F.3d at 171 (quoting Rogin v. Bensalem Twp., 616 F.2d 680, 689 (3d Cir. 1980)). Courts should first "examine whether the complaining party is similarly situated to other uses that are permitted as of right, or by special permit, in a certain zone." Id. If similarly situated, the burden then shifts to the government to "justify its different treatment of the two by demonstrating that the ordinance is rationally related to a legitimate government purpose." Id. (citations omitted).

In this case, it appears that factual issues exist with respect to whether or not Plaintiffs'

9

properties are similarly situated to other surrounding properties. Summary judgment is still appropriate, however, because even assuming that Plaintiffs can show similarly situated uses, the Township has nonetheless demonstrated that the Ordinance is rationally related to a legitimate state interest. See Rogin, 616 F.2d at 687 & n.29 (applying rational basis test to classifications based on economic activity). As the Court explained in discussing Plaintiffs' SDP challenge, the Township has legitimate interests in preserving environmental resources and conforming the properties' uses to their own characteristics and those of the surrounding areas, and the 2001 Ordinance is a rational means for accomplishing these interests. See Congregation Kol Ami, 309 F.3d at 133 (noting that a land-use ordinance will be deemed "irrational" upon a showing "either that the state interest is illegitimate (an ends-focus) or that the chosen classification is not rationally related to the interest (a means-focus)").[2] Accordingly, because the Township has demonstrated that the 2001 Ordinance is rationally related to a legitimate government purpose, Defendants' motion for summary judgment on the EPC is granted.[3]

---

[2] Nor is the Court persuaded that the Ordinance is irrational based on Plaintiffs' conclusory allegations of "improper motives" and "bare animus." Plaintiffs cite to a series of actions taken prior to the Ordinance's passing as evidence that Defendants were motivated by "animus," including, *inter alia*, the 1999 investigation and Bodolsky letter and the mayor's public resistance to the expansion of their mining activities. While facially these actions appear wholly appropriate for public officials in this context, Plaintiffs suggest that "improper motives" should be inferred because the purported goals of the re-zoning were "so totally irrational" that the defendants "had to have [had] other, illegitimate reasons for their actions against the plaintiffs." Because the Court has already found that a rational basis exists for the Ordinance, however, and because the record does not otherwise support a finding that the Ordinance was passed with "improper motives," Plaintiffs' argument is rejected.

[3] Because the Court has dismissed Plaintiffs' SDP and EPC claims, it will not address Defendants' request that claims for punitive damages under the civil rights counts be dismissed.

D.      Fifth Amendment Just Compensation Takings Claim

Plaintiffs next bring a facial challenge to the 2001 Ordinance under the Fifth Amendment's Takings Clause, arguing that the mere enactment of the Ordinance has denied them all economically viable use of their property.[4]  Facial challenges to land-use regulations "face an uphill battle" because they require plaintiffs to show that the "mere enactment" of the ordinance constitutes a taking.  See Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 736 n.10 (1997); see also County Concrete, 442 F.3d at 159.  Generally, facial challenges will succeed only to the extent that they "establish that no set of circumstances exist[] under which the [challenged a]ct would be valid."  United States v. Salerno, 481 U.S. 739, 745 (1987).  Nonetheless, a land-use regulation may be held to effect a taking on its face if it "denies an owner economically viable use of his land."  See Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc., 452 U.S. 264, 295–96 (1981).

Here, summary judgment is inappropriate because issues of fact exist as to whether or not the Ordinance, even on its face, "denies [Plaintiffs of the] economically viable use of [their] land."  See City of Monterey v. Del Monte Dunes, 526 U.S. 687, 720 (1999) ("[W]hether a landowner has been deprived of all economically viable use of his property is a predominantly factual question.").  Defendants argue that the Ordinance does not deny Plaintiffs the "economically viable use" of their land because it does not categorically prohibit mining and because it does not purport to regulate alternative uses for the properties, such as development

---

[4]On appeal, the Third Circuit held that Plaintiffs had waived all Takings claims other than a facial attack on the Ordinance.  See County Concrete, 442. F.3d at 165.

11

for residential housing.  See Hodel, 452 U.S. at 296–97 (upholding zoning ordinance against facial attack because it "does not categorically prohibit surface coal mining" and "does not purport to regulate alternative uses to which coal-bearing lands may be put").  Plaintiffs respond by arguing that the Ordinance effectively proscribes mining by barring industrial uses for the land, and that any alleged alternative uses are incompatible with the industrial character of the properties.  Plaintiffs specifically deny that the land may be converted to residential development, arguing that none of the sites are suitable for large-lot single-family homes.  Accordingly, because an issue of fact exists as to whether the 2001 Ordinance proscribes all "economically viable use" of the properties, and because such determinations are more appropriate for the trier of fact, the Court will deny the Roxbury Township Defendants' motion for summary judgment.  With respect to Defendant Bodolsky, however, the Court will grant his motion for summary judgment because it appears not only that he had no role in the passing the 2001 Ordinance, but that he had in fact left government service as early as December 1999.

E.      Duty of Good Faith and Fair Dealing Claim

Plaintiffs allege that Defendants violated the covenant of good faith and fair dealing implicit in the 1993 Developer's Agreement between Plaintiffs and the Township.  Contracts in New Jersey automatically include an implied covenant of good faith and fair dealing.  See Black Horse Lane Ass'n, L.P. v. Dow Chemical Corp., 228 F.3d 275, 288 (3d Cir. 2000).  The covenant requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Id. (quoting Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 587 (N.J. 1997)).  Contracting parties may breach the

12

covenant if they act in bad faith or engage in some other form of inequitable conduct in the performance of their contractual obligations.  See id.

Here, it appears that genuine issues of material fact exist that prevent the Court from granting summary judgment for the Roxbury Township Defendants.  Defendants claim that no evidence supports a finding that they acted to frustrate Plaintiffs' enjoyment of the benefits of the contract.  Plaintiffs counter by citing specific actions taken by Defendants that they allege are part of a campaign of inequitable conduct engaged in by Defendants with the intent of impeding and eventually eliminating Plaintiffs' mining and other industrial activities.  While the Court has already ruled that the evidentiary record does not support a finding that the Ordinance itself was passed with "improper motives," it nonetheless remains unclear whether the acts preceding the Ordinance support a claim that Defendants' breached the implied covenant under the 1993 Resolution.  Accordingly, because it appears that genuine issues of fact exist as to whether or not Defendants acted in bad faith or engaged in a campaign of inequitable conduct to prevent Plaintiffs from enjoying the fruits of the 1993 Resolution, the Roxbury Township Defendants' motion for summary judgment is denied.  With respect to Defendant Bodolsky, however, the Court will grant his motion for summary judgment because, as he correctly points out, no evidence exists in the record to support a finding that he was a party to any of the Township's contracts with Plaintiffs.[5]

---

[5] The Court also notes that Plaintiffs did not respond in their brief to Bodolsky's argument for summary judgment on the ground that he is not a contracting party.

13

## IV. CONCLUSION

For the reasons stated, it is the finding of this Court that Bodolsky's motion for summary judgment is **granted**; and the Roxbury Township Defendants' motion for summary judgment is **granted** as to the SDP and EPC claims, and **denied** as to the Takings and contract claims. An appropriate Order accompanies this Opinion.

        S/ Dennis M. Cavanaugh
        Dennis M. Cavanaugh, U.S.D.J.

Date:      March  30 , 2009
Orig.:      Clerk
cc:        All Counsel of Record
           Hon. Mark Falk, U.S.M.J.
           File